**FILED**

**April 12, 2018**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 3:53 P.M. EASTERN



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT KNOXVILLE

| | | |
|---|---|---|
| **ESTEL "BLACKIE" MUSE,** | ) | **Docket No. 2015-02-0155** |
| **Employee,** | ) | **2015-02-0156** |
| **v.** | ) | |
| **CAMPBELL COUNTY,** | ) | **State File No. 40357-2015** |
| **Employer.** | ) | **31700-2015** |
| | ) | |
| | ) | **Judge Lisa A. Lowe** |

## COMPENSATION HEARING ORDER

This matter came before the Court on March 28, 2018, for a Compensation Hearing. Following the hearing, Campbell County filed a Motion to Supplement Evidence. Mr. Muse filed a response, and the Court ordered him to provide information about his social security benefits on or before April 13. Additionally, Mr. Muse filed a Motion for Leave to Amend to Allow Constitutional Challenge on April 5, which the Court addressed in a separate order.

The central legal issues are: (1) the compensability of Mr. Muse's right shoulder, bilateral upper extremity, and occupational lung disease claims, and if established, the extent of permanent partial disability; and (2) Mr. Muse's entitlement to permanent partial disability benefits for his stipulated compensable back and hearing-loss claims. For the reasons below, this Court holds that Mr. Muse failed to establish by a preponderance of the evidence that his right shoulder, bilateral upper extremity, and occupational lung disease conditions arose primarily out of and in the course and scope of his employment with Campbell County. The Court further holds that Mr. Muse is entitled to permanent partial disability benefits and future medical treatment for his back and hearing loss.

### History of Claim

Mr. Muse is sixty-six years old with an eighth grade education. He worked for Campbell County as an Assistant Road Superintendent from September 2014 until April 21, 2015. He initially made a claim for a back injury then later claimed right shoulder, bilateral

1

upper extremity, lung, and hearing loss injuries. The parties stipulated April 21, 2015, as the date of injury for all claims and that Mr. Muse did not return to work for any employer after that date. Campbell County accepted the back and hearing-loss claims but denied the right shoulder, bilateral upper extremity, and lung claims. His average weekly wage was $1,039.87 with a compensation rate of $693.25. On April 9, 2017, Mr. Muse began receiving monthly social security benefits. He received $1,374.00 for March 2017 and $1,240.00 for April 2017.

*Back*

As noted, Campbell County accepted Mr. Muse's back claim and provided authorized medical treatment with panel-selected physician Dr. Patrick Bolt. Dr. Bolt released him to return to work on August 8, 2016, assigned eight-percent impairment to the body as a whole, and noted permanent restrictions. Mr. Muse obtained an independent medical evaluation (IME) with Dr. C.M. Salekin, who assigned an impairment rating of ten percent to the body as a whole.

*Hearing Loss*

Campbell County also accepted Mr. Muse's claim for hearing loss and provided an authorized evaluation with Dr. Clifford Johnson. Dr. Johnson assigned three-percent impairment to the body as a whole for his hearing loss and tinnitus. Dr. Salekin assigned two-percent impairment for hearing loss and additional five-percent impairment for tinnitus.

*Right Shoulder and Bilateral Upper Extremities*

Mr. Muse claimed additional injuries to his right shoulder and bilateral upper extremities. Campbell County denied compensability for those injuries but ultimately provided a panel of physicians, and he selected Dr. David Hovis. Dr. Hovis noted,

> [I]t is my medical opinion, given the information obtained from the patient, from the [prior] medical records . . . , and from his history of employment that the bilateral upper extremity symptoms, including the right shoulder pain, the bilateral hand numbness and pain, and the left elbow pain, are less than 50% related to the work injury of April 21, 2015.

Mr. Muse again sought the opinion of Dr. Salekin. In Dr. Salekin's June 28, 2015 C-32, he noted that Mr. Muse denied any problem with his right shoulder. However, in Dr. Salekin's March 25, 2017 C-32, he found that Mr. Muse injured his right shoulder when he fell at work on April 21, 2015. He marked "yes" to the question: "Was the employment activity, more likely than not, primarily responsible for the injury or primarily responsible for

the need for treatment."[1] Dr. Salekin testified that the notation about Mr. Muse denying any problem with his right shoulder was in error and actually meant the left shoulder. He attributed Mr. Muse's carpal tunnel and cubital tunnel conditions to his employment with Campbell County and assigned two-percent impairment for carpal tunnel and one-percent impairment for cubital tunnel.

*Occupational Lung Disease*

Mr. Muse further claimed that he suffers from occupational lung disease due to exposure to lime and sand dust at Campbell County. Dr. Salekin found his lung disease to be work-related. In his first C-32, he assigned fifty-percent impairment for his lung disease. However, in his 2017 C-32, Dr. Salekin assigned twenty-three-percent impairment for Mr. Muse's lung condition. Dr. Salekin testified that he relied upon a pulmonary function test performed at University of Tennessee that showed obstructive and restrictive defects. He also relied on chest x-rays that showed calcified lymph nodes that, in his opinion, were caused by silicosis, which came from exposure to silicone dust.

Campbell County obtained an IME with board-certified pulmonologist Dr. Greg LeMense. Dr. LeMense's records contained the following notations:

> Pulmonary function test at Community Health of East Tennessee shows the patient performed two prebronchodilator efforts and 5 post bronchodilator efforts, none of which met ATS criteria for an appropriate spirometry effort. Review of the volume/time graph showed that the patient discontinued his exploratory effort in less than 3 seconds on all but one effort, and appeared to have ongoing airflow at the time that he discontinued the effort. Despite the evidence to the contrary, the respiratory therapist performing the test documented good effort and cooperation. Despite the inadequate pulmonary function testing, Dr. Salekin used it as evidence to give Mr. Muse a 50% impairment based on his pulmonary function testing. On two separate test dates, he has been unable to perform an appropriate spirometry maneuver and I cannot make an accurate assessment of his actual lung function based on his spirometry results from either testing date. Of note, when told that he needed to exhale for at least six seconds; the patient intentionally held his breath for 6 seconds during an 8 second exhalation and then exhaled further. This evidence further supports my impression of intentional poor effort. The patient had no evidence of shortness of breath such as tachypnea or pressured speech throughout my interview and examination. He was able to speak in complete

---

[1] Following Campbell County's Motion to Strike Dr. Salekin's February 18, 2018 C-32 addressing impairment for the right shoulder, Mr. Muse agreed to withdraw his use of that C-32. As a result, the Court precluded Dr. Salekin from testifying with regard to impairment for his alleged right shoulder injury.

3

sentences and frequently would speak two sentences with a single breath. His chest x-ray shows no evidence of interstitial lung disease or other occupational disease. He does have numerous calcified granulomas which are typical in this part of the country. I can only comment that his x-ray and lung exam do not suggest any type of lung disease.

Mr. Muse asserted entitlement to extraordinary relief under Tennessee Code Annotated section 50-6-242(a)(2), or in the alternative that he is entitled to his original award (1 x his impairment ratings) and the increased benefits for no return to work (1.35), lack of high school diploma or general equivalency diploma (1.45), and age (1.2). Mr. Muse confirmed, in his response to Campbell County's Motion to Supplement Evidence, that he is not seeking permanent total disability benefits.

Campbell County countered that the Court should only consider the eight-percent rating for his back and the three-percent impairment for hearing loss when determining his permanent partial disability benefits.

### Findings of Fact and Conclusions of Law

The following legal principles govern this case. Mr. Muse has the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff,* 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2017) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence.").

Campbell County accepted the back and hearing-loss claims as compensable. So, the Court must determine whether Mr. Muse demonstrated by a preponderance of the evidence that his right shoulder, bilateral upper extremity and lung conditions arose primarily out of and in the course and scope of his employment. To do so, he must show, to a reasonable degree of medical certainty, that the employment contributed more than fifty percent in causing the need for medical treatment, considering all causes. Shown to a reasonable degree of medical certainty means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. *See generally* Tenn. Code Ann. § 50-6-102(14).

"The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(13)(E). However, a trial judge "has the discretion to conclude that the opinion of

4

one expert should be accepted over that of another expert." *Reagan v. Tennplasco*, No. M2005-02020-WC-R3-CV, 2006 Tenn. LEXIS 1209, at *10 (Tenn. Workers' Comp. Panel Dec. 27, 2006). As stated by the Tennessee Supreme Court, "[w]hen faced . . . with conflicting medical testimony . . . it is within the discretion of the trial judge to conclude that the opinion of certain experts should be accepted over that of other experts and that it contains the more probable explanation." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991) (internal quotation marks omitted).

## *Dr. Salekin*

Here, the Court faces differing medical opinions. Mr. Muse obtained IMEs with Dr. Salekin for his various conditions. Considering Dr. Salekin's qualifications, he is not currently board-certified. He testified he has a part-time practice in independent medical evaluation and is also writing a book. When Dr. Salekin performs IMEs for Attorney Dunaway's clients, he evaluates the patients on the weekend at Attorney Dunaway's office. He had difficulty explaining his record-keeping system for his IME practice. He testified that in this case, he hand-wrote the report and gave it to "Lisa" at Attorney Dunaway's office to type before he reviewed and signed it. When asked to locate his handwritten notes, he said he destroys the notes after the report is typed. Dr. Salekin acknowledged that he did not perform or order any diagnostic testing.

Dr. Salekin's opinions are problematic for several reasons. In his May 31, 2015 report, he noted under "Review of System" that Mr. Muse denied shortness of breath but found he suffered from severely obstructive and restrictive lung disease. During testimony, Dr. Salekin indicated the notation was an error. In his June 28, 2015 report, Dr. Salekin noted Mr. Muse denied any problem with his right shoulder, yet he diagnosed him with a right shoulder rotator cuff tear related to the work injury without the benefit of any diagnostic test results. Dr. Salekin testified the denial of any right shoulder problem notation was an error. He initially assigned a fifty-percent impairment rating for Mr. Muse's lung condition then later assigned a rating of twenty-three-percent with no explanation for the difference.

## *Drs. Bolt, Hovis, Johnson, LeMense*

In contrast, Dr. Bolt is an orthopedic surgeon and, as a panel-selected physician, his eight-percent impairment rating for Mr. Muse's back is presumed correct. Dr. Hovis is an orthopedic surgeon and a panel-selected physician. Therefore, his opinion that Mr. Muse's right shoulder and left upper extremity conditions are less than fifty percent related to the work injury is also presumed correct. Mr. Muse argued that the nurse case manager prevented Dr. Hovis from addressing his right shoulder, but Dr. Hovis' report contains a section entitled "Right Shoulder Examination." It appears Dr. Hovis performed the same examination on Mr. Muse's right and left shoulders.

The Court is unclear as to whether Dr. Johnson was selected from a panel or performed an IME at Campbell County's request. However, even if Dr. Johnson's opinion were not entitled to the presumption, he is an ear, nose, and throat specialist. He also reviewed and relied upon an audiogram performed at his office on the date of the exam. Dr. LeMense specializes in pulmonology and thoroughly outlined the issues with regard to Mr. Muse's test efforts. He explained why Dr. Salekin should not have relied on the prior pulmonary function tests to assign an impairment rating.

The Court finds the qualifications of Drs. Bolt, Hovis, Johnson, and LeMense to be more relevant to evaluating the types of injuries Mr. Muse alleged and the circumstances of their evaluations to be more favorable. The Court finds Dr. Salekin's opinions did not rebut those of Drs. Bolt and Hovis and assigns greater weight to the opinions of Drs. Johnson and LeMense over Dr. Salekin's. Therefore, the Court holds that Mr. Muse failed to establish by a preponderance of the evidence that his right shoulder, bilateral upper extremity, and occupational lung disease conditions arose primarily out of and in the course and scope of his employment with Campbell County.

*Extraordinary Relief*

Mr. Muse argued the extraordinary relief under Tennessee Code Annotated section 50-6-242 applies. However, he failed to meet the required criteria. Since the Court adopts Dr. Bolt's eight-percent impairment rating, Mr. Muse failed to meet the ten-percent impairment requirement. Further, he failed to introduce a physician's certification, *on a form prescribed by the Bureau,* that he no longer has the ability to perform his pre-injury occupation.

*Permanent Partial Disability Benefits*

The Court holds that Mr. Muse sustained eight-percent impairment for his back based on the opinion of Dr. Bolt, which is presumed correct, and three-percent impairment for his hearing loss based on the opinion of Dr. Johnson. Mr. Muse's original award for hearing loss equates to $9,358.87 and for his back equates to $24,957.00. He reached maximum medical improvement for his hearing loss on May 31, 2015, and on August 8, 2016, for his back. Therefore, the original award permanent disability benefits have accrued and shall be paid in a lump sum.

*Increased Benefits*

The Court holds that Mr. Muse established entitlement to increased benefits under Tennessee Code Annotated section 50-6-207(3)(B) for his inability to return to work, age, and education. Therefore, his awards shall be increased by multiplying the original awards by factors of 1.35, 1.45, and 1.2. After applying these multipliers, Mr. Muse's increased benefits for his hearing loss equate to $12,625.11 and for his back equate to $33,667.00.

6

Campbell County argued entitlement to an offset for social security old age benefits. The Tennessee Supreme Court established that, "the Social Security offset . . . applies to workers over age sixty who suffer injuries to the body as a whole, regardless if the injury is for permanent partial or permanent total disability benefits." *McCoy v. T.T.C., Illinois, Inc.,* 14 S.W.3d. 734, 737 (2000). Thus, the Court must determine the appropriate time period for Campbell County's offset.

Mr. Muse's initial compensation period consisted of thirty-six weeks and expired on April 17, 2017, which means the increased benefits have accrued and will be paid in a lump sum. At the time the initial compensation expired, he received social security benefits for four weeks in March 2017 and for two weeks in April 2017. The Court concludes that since Mr. Muse only received social security benefits for six out of the thirty-six weeks of the initial compensation period, it would be inequitable to apply the offset to the entire amount of increased benefits. Therefore, the Court limits Campbell County's offset to that six-week period. Solely for purposes of determining the appropriate offset amount, the Court equates the increased benefits to a number of weeks, which is 66.78 weeks. For sixty of those weeks, Mr. Muse is entitled to benefits at his regular compensation rate of $693.25 for $41,595.00.

Mr. Muse received different amounts of social security benefits for March and April 2017. For March, he received $1,374.00, which equates to $343.50 per week. Reducing that by half equates to $171.75, which reduces the compensation rate to $521.50, and four weeks at that rate equals $2,086.00. In April, Mr. Muse received $1,240.00, which equates to $310.00 per week. Reducing that by half equates to $155.00, which reduces the compensation rate to $538.25, and two weeks at that rate equals $1,076.50. After applying the offset, the Court holds Mr. Muse is entitled to $44,757.50 in increased benefits.

The Court holds his total award for permanent partial disability benefits with increased benefits and applied social security offset totals $79,073.37.

The Court further holds Mr. Muse's attorney is entitled to a reasonable attorney's fee. The statute provides attorney's fees shall be deemed reasonable if the fee "does not exceed twenty percent (20%) of the award to the injury worker." Thus, the Court holds counsel for Mr. Muse is entitled to a twenty-percent fee.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Muse shall recover permanent partial disability benefits totaling $79,073.37.

2. Mr. Muse shall receive future medical benefits under the statute for his back and hearing loss.

3. Mr. Muse's attorney is awarded a twenty-percent attorney's fee to be paid from his award.

4. Costs of $150.00 are assessed against Campbell County under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2016), to be paid within five days of entry of this order. It shall also file Form SD-1 within that timeframe.

5. Absent an appeal of this order, it shall become final thirty days after issuance.

**ENTERED on April 13, 2018.**

**LISA A. LOWE, JUDGE**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. Deposition of Dr. Clifford Johnson
2. Deposition of Dr. Jean-Francois Reat (withdrawn)
3. Standard Form Medical Reports for Industrial Injuries, Form C-32, of Dr. C.M. Salekin:
   a. May 31, 2015
   b. June 28, 2015
   c. March 25, 2017
   d. April 30, 2017
4. Medical Records Table of Contents
   a. Dr. Patrick Bolt
   b. Dr. Greg LeMense
   c. Dr. W. David Hovis
   d. Dr. Clifford Johnson
5. Video of Activities of Estel "Blackie" Muse
6. C-32 of Dr. Bolt with attached medical records
7. Late-filed social security old age benefits documentation

Technical record:

8

1. Petition for Benefit Determination for Docket No.: 2015-02-0155
2. Petition for Benefit Determination for Docket No.: 2015-02-0156
3. Dispute Certification Notice for Docket No.: 2015-02-0155
4. Dispute Certification Notice for Docket No.: 2015-02-0156
5. Motion to Consolidate
6. Agreed Order of Consolidation
7. Employee's Notice of Intent to Use Medical Report of Dr. Patrick Bolt in Lieu of Deposition, filed December 20, 2015
8. Employee's Notice of Intent to Use Medical Report of Dr. Salekin in Lieu of Deposition, filed March 28, 2017
9. Objection to Notice of Intent to Use Medical Report of Dr. Salekin in Lieu of Deposition, filed March 31, 2017
10. Motion in Limine and/or Motion to Strike C-32 of Dr. Salekin, filed March 31, 2017
11. Response to Motion in Limine and/or Motion to Strike C-32 of Dr. Salekin, filed April 3, 2017
12. Order Denying Motion in Limine and/or Motion to Strike C-32 of Dr. Salekin issued April 27, 2017
13. Amended Petition for Benefit Determination, filed March 28, 2017
14. Post ADR Dispute Certification Notice, April 28, 2017
15. Notice of Intent to Use Dr. Salekin's April 30, 2017 Medical Report in lieu of Deposition, filed May 2, 2017
16. Request for Expedited Hearing, filed August 14, 2017
17. Response to Employee's Request for Expedited Hearing Regarding Alleged Right Shoulder Injury, filed August 25, 2017
18. Expedited Hearing Order Denying Benefits, filed September 27, 2017
19. Notice of Intent to use Dr. Salekin's February 18, 2018 Medical Report in lieu of Deposition, filed February 20, 2018
20. Objection to Use Dr. Salekin's February 18, 2018 Medical Report in Lieu of Deposition, filed February 27, 2018
21. Employer's Motion for Extension of Time to file Motion in Limine, Motion to Strike regarding Standard Form Medical Report for Industrial Injuries of Dr. C.M. Salekin dated February 18, 2018, Employer's Motion to Strike, Motion in Limine regarding Standard Form Medical Report for Industrial Injuries of Dr. C.M. Salekin dated February 18, 2018, and Motion for Trial Continuance, filed February 28, 2018
22. Employer's Motion in Limine, Motion to Strike regarding Deposition Testimony of Dr. Jean-Francois P. Reat, filed February 28, 2018
23. Employee's Response to Motion for Extension of Time and Response to Motion to Strike Form C-32 and Employee's Response to Motion to Strike and/or Motion in Limine regarding Standard Medical Form for Industrial

Injuries and Employee's Response to Motion for Continuance, filed March 6, 2018

24. Order Denying Employer's Motion in Limine and/or Motion to Strike and Motion for Continuance, filed March 12, 2018
25. Post ADR Dispute Certification Notice, filed March 1, 2018
26. Campbell County's Witnesses List, March 6, 2018
27. Campbell County's filed Medical Records, March 6, 2018
28. Campbell County's Exhibit List, filed March 6, 2018
29. Campbell County's Pre-Compensation Hearing Statement, filed March 6, 2018
30. Employee's Pre-Compensation Hearing Statement, filed March 6, 2018
31. Notice of Filing of Deposition of Dr. Clifford Johnson, filed March 7, 2018
32. Notice of Filing Deposition of Dr. Jean-Francois Reat, filed March 7, 2018
33. Motion to Supplement Evidence
34. Order Granting Motion to Supplement Evidence
35. Motion for Leave to Amend to Add Constitutional Challenge
36. Order Denying Motion for Leave to Amend

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on April 13, 2018.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| David H. Dunaway, Employee's Attorney | | | x | dhdunaway@aol.com |
| Rhonda L. Bradshaw, Employer's Attorney | | | x | rlb@spicerfirm.com |

PENNY SHRUM, COURT CLERK
wc.courtclerk@tn.gov

10